IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Parentage of: | ) | No. 38600-7-III |
| | ) | |
| L.A.J. | ) | |
| | ) | |
| SHANE ARCHIBALD, | ) | |
| | ) | |
| Appellant, | ) | UNPUBLISHED OPINION |
| | ) | |
| and | ) | |
| | ) | |
| KATHERINE JOHNSTON, | ) | |
| | ) | |
| Respondent. | ) | |

LAWRENCE-BERREY, A.C.J. — Shane Archibald appeals the trial court's contempt order and judgment. We affirm.

FACTS

Shane Archibald and Katherine Johnston are the parents of a young girl. The parties separated two years after their daughter's birth.

In late August 2018, Mr. Archibald filed a petition requesting that his parentage be recognized and to set a visitation schedule. A few weeks later, Ms. Johnston filed her response and requested temporary child support. For some reason, a temporary child

support order was not entered until the fall of 2020, at which time the court ordered Mr. Archibald to pay $698.15 per month starting September 1, 2020.

In October 2020, the case proceeded to trial. The issues included a parenting plan, child support, and attorney fee requests. In late December 2020, the court issued a letter opinion, setting a residential placement and child support.

In its letter opinion, the trial court discussed its reasons for its child support calculations. It explained that Mr. Archibald had presented numerous documents pertaining to his business, Leganjafairy, LLC, purporting to show his lack of income. The court examined Mr. Archibald's tax returns, profit and loss statements, and utility and mortgage statements. The court expressed its concern "that [Mr.] Archibald is trying to make it look like he has no income, but he has been bringing in profits from his business, and the Court cannot correlate his testimony with his own profit/loss statements." Clerk's Papers (CP) at 10.

The trial court noted that Mr. Archibald testified he was behind on his mortgage payments but that his income would have supported paying basic expenses every month. The court also noted that Mr. Archibald admitted on cross-examination that his mortgage was deferred that year. Regarding his profit and loss statements, the court found that Mr. Archibald had utility expenses each month that he deducted from the business profits, yet

he showed the court his utilities were not being paid. It concluded, "there is a sleight of hand in the actual expenses and what is being paid." CP at 9.

With respect to back child support, the trial court noted that Ms. Johnston had requested temporary child support two years earlier and believed that awarding back child support was warranted. It ordered 12 months of back support, starting September 2019 but provided Mr. Archibald some relief by granting a residential credit for 12 months so the $698.15 monthly obligation was lowered to $650.00. Multiplying $650.00 by 12 months resulted in Mr. Archibald owing back child support of $7,800.00. The court ordered him to pay this amount at $300.00 per month in bi-monthly payments of $150.00.

With respect to current child support, the trial court ordered Mr. Archibald to continue paying $698.15 per month starting September 1, 2020 until February 1, 2021, after which time he would pay a reduced amount of $650.00 per month.

The trial court also determined that attorney fees were warranted, but decided that Ms. Johnston could pay the fees out of Mr. Archibald's $300 monthly arrears payments.

In the spring of 2021, Mr. Archibald sought to reduce his monthly child support obligation. The trial court agreed to lower his payment to $328 per month and entered an amended child support order. The June 25, 2021 amended order provided in relevant part:

> The monthly child support amount must be paid starting July 1, 2021 on the following payment schedule:
>
> In two payments each month: 1/2 by the 15th and 1/2 by the 30th day of the month.
>
> Other: Mr. Archibald must still pay Ms. Johnston $698.15 per month from September 2020 through January 2021 pursuant to the temporary child support order entered September 25, 2020.
>
> **Additionally** Mr. Archibald must still pay Ms. Johnston $650.00 per month from February 2021 through June 2021 pursuant to the final child support order entered March 12, 2021.

CP at 20-21. The amended child support order set Mr. Archibald's proportionate share of child day care expenses at 62 percent. With respect to back child support, the court ordered: "Should Shane Archibald not pay as directed, the Court will reduce any owed amounts to a judgment." CP at 24.

One month later, Ms. Johnston enrolled her daughter in a full-time day care program. During July and August, she paid a total of $1,442.07 in day care expenses. On August 16, 2021, she e-mailed Mr. Archibald requesting that he pay $894.08, his portion of the expense, within 10 days. Mr. Archibald refused to pay.

On September 27, 2021, Ms. Johnston filed a motion requesting that Mr. Archibald be found in contempt. She alleged that Mr. Archibald failed to pay his portion of day care expenses and requested the court to reduce his unpaid day care expenses to a judgment.

4

She explained she and Mr. Archibald had a near 50/50 parenting plan, that she had her daughter from Sunday at 6:00 p.m. through Wednesday at 3:00 p.m., and that she needed full-time day care because part-time was not an option. She attached her August 16, 2021 e-mail she sent to Mr. Archibald requesting payment, as evidence of his noncompliance.

Ms. Johnston also requested the court to enter judgment for past-due child support in the amount of $11,710.75. She explained that this amount consisted of the original back child support of $7,800.00 and almost $4,000.00 Mr. Archibald had not paid in monthly child support payments after September 2020. She attached a chart from the Division of Child Support (DCS), evidencing Mr. Archibald's history of child support payments from October 2020 through August 2021.

As can be seen by the excerpt of the chart below, it shows total current payment arrears of $11,710.75. It also shows: (1) between October 2020 through almost all of April 2021, Mr. Archibald paid only $234.00 of child support and nothing toward his arrear's payment, (2) in April 2021 and May 2021, he began paying his current monthly support payment of $650.00 but only $46.00 toward his arrears payment,[1] and (3) in

---

[1] DCS's June 3, 2021 receipt of $650 actually is a late May payment of $650. For this reason, DCS's June 30, 2021 receipt of $650 should reflect a June current payment rather than a June arrears payment.

July 2021 and August 2021, he paid his reduced child support monthly payment of $328.00 and his monthly arrear's payment of $300.00.

| Receipt Date | Current Payment | Current Payment Arrears | Annual Fee | Total Payment |
|---|---|---|---|---|
| 08-31-2021 | $328 | $300 | $0 | $628 |
| 07-30-2021 | $328 | $300 | $0 | $628 |
| 06-30-2021 | $0 | $650 | $0 | $650 |
| 06-03-2021 | $650 | $0 | $0 | $650 |
| 04-30-2021 | $650 | $46 | $35 | $696 |
| 10-20-2020 | $117 | $0 | $0 | $117 |
| 10-05-2020 | $117 | $0 | $0 | $117 |
| | | | Total Amount Paid: | $3,486 |

CP at 37. Ms. Johnston also requested $1,250.00 in attorney fees for bringing her motion.

Mr. Archibald responded that he was not in contempt because he was unable to pay. To establish this, he attached to his declaration a past due mortgage statement, past due utility statements, and an attorney bill in collection.

Regarding day care expenses, he stated he was unaware that Ms. Johnston had enrolled their daughter in full-time day care and only found out when he received her August 2021 e-mail demanding payment within 10 days. He stated he had repeatedly told her in person and in texts that their daughter could be with him "24/7." CP at 39. To establish this, he attached to his declaration two screen shots of a short series of text messages between Ms. Johnston and him.

6

In the first attached screenshot, Ms. Johnston asked what Mr. Archibald's plans were during the days that summer. Mr. Archibald said their daughter could be with him. Ms. Johnston then asked if he was not planning on working during half the summer.[2] Mr. Archibald responded that he "can work from home for the most part." CP at 58.

In the second attached screenshot, Ms. Johnston asked Mr. Archibald if he had addressed his concerns about a specific day care she chose. He responded that he did not, that it was her day care center and her responsibility. He reiterated that their daughter could stay with him.

Ms. Johnston replied that she asked Mr. Archibald to pay for day care on July 1, 2021, and attached a date-stamped text message as evidence. She argued that it was very difficult to find an opening in a day care program and that the only option was full-time day care. She also noted that the parenting plan did not have a right of first refusal for either parent.

At the contempt hearing, Ms. Johnston requested the court to hold Mr. Archibald in contempt and to reduce the unpaid child support and day care expenses to a judgment. Mr. Archibald responded that he had no income and did not falsify his business profit and

---

[2] The parties' parenting plan is not part of the appellate record. But in her declaration supporting her motion for contempt, Ms. Johnston explained that she and Mr. Archibald had a near 50/50 parenting plan, and her daughter was with her from Sunday at

7

loss statements. He explained that he was not unwilling to pay, but that he could not pay.

He cited his mortgage statement and utility statements as evidence of his inability to pay.

Regarding day care, he said that Ms. Johnston enrolled their daughter in full-time day

care, even on the days she was with him. He acknowledged that Ms. Johnston had asked

him to pay for day care, but that she did not say anything about the cost. "She asked me

to pay for my time, my days, I said no. [Our daughter] doesn't want to go. [Ms.

Johnston] sent me a bill for nearly $1,000 with a due date in ten days. I don't have $1,000

especially in ten days." Rep. of Proc. (RP) at 33.

The contempt court explained that it had reviewed the file, including the child

support orders and the court's letter opinion.[3] It ruled it would enter a judgment for the

amount of back support and arrears on the DCS payment history. Regarding day care, the

contempt court explained to Mr. Archibald:

> Childcare is a proportionate share. I understand that your argument
> regarding childcare is that there were portions of that time that [you] were
> having to pay for it that it either wasn't utilized or didn't need to be utilized.
> But that is if there was a right of first refusal in the documents, I certainly
> didn't see that . . . . Because of the proportionate share you are responsible

---

6:00 p.m. through Wednesday at 3:00 p.m.

[3] The contempt court actually said it had reviewed the trial court's "findings and conclusions." RP at 40. We infer it meant the letter opinion because it explained how—in the last paragraph—the trial court said that Ms. Johnston's attorney fees would be paid by Mr. Archibald paying the child support arrears.

for that amount.  It's not whether it was reasonable, whether you are available to care for the child at the time . . . those defenses are not valid when we're talking about childcare.

RP at 47-48.  The court indicated it would reduce the unpaid day care expenses to a judgment.  Last, the court awarded $600 in attorney fees to Ms. Johnston.

After the hearing on the motion, the court issued its written order of contempt. The court found that Mr. Archibald had failed to obey the child support "orders," but listed only one order—the June 25, 2021 amended child support order.  CP at 76.  It further found that Mr. Archibald was able to pay the ordered amount and that his failure to pay was intentional.  It entered judgment against Mr. Archibald for past due child support in the amount of $11,710.75, unpaid day care expense in the amount of $894.08, and attorney fees in the amount of $600.00

Mr. Archibald timely appealed.

ANALYSIS

FAILURE TO COMPLY WITH CHILD SUPPORT ORDERS AND INTENTIONALITY

Mr. Archibald contends the DCS chart showed he fully paid his monthly

child support and monthly arrears payments. In making this argument, he limits it to the

July 2021 and the August 2021 payments. He asserts the only pertinent child support

order was the June 2021 amended child support order. We disagree.

The contempt order concludes that Mr. Archibald violated support "orders." CP at

76. It incongruently listed only the June 25, 2021 support order. The record clearly

shows that Ms. Johnston did not limit her arguments to the June 2021 support order. Nor

did the contempt court. The contempt court explained that it had reviewed the child

support orders. During the hearing, the parties and the court discussed Mr. Archibald's

entire payment history, not just the last two months.

Mr. Archibald next argues, even were we to view Ms. Johnston's motion for

contempt as including April 2021, May 2021, and June 2021, the chart shows he did

make the required payments. Not true. The April payment was $254 short of paying the

$300 monthly arrear's obligation, and the May and June payments did not pay any of the

monthly arrear's obligation.

Mr. Archibald also argues he did not intentionally fail to pay; rather, he was unable to pay. Resolution of this issue requires a weighing of the facts.

We review a trial court's findings of fact for substantial evidence. *In re Parentage of Goude*, 152 Wn. App. 784, 790, 219 P.3d 717 (2009). Substantial evidence is that which is sufficient to persuade a fair-minded person of the declared premise. *Id.* If this standard is satisfied, we will not substitute our own judgment for that of the trial court even though we may resolve a factual dispute differently. *In re Est. of Hayes*, 185 Wn. App. 567, 609, 342 P.3d 1161 (2015).

The contempt court explained that it had reviewed the file, including the trial court's letter opinion. In that opinion, the trial court explained why it did not believe Mr. Archibald's claims that he was unable to pay more than minimal child support. Evidently, the trial court softened its view months later when, in June 2021, it reduced Mr. Archibald's child support payment in half.

Nevertheless, we note that Mr. Archibald finally started making a good faith effort to pay child support in late April 2021. This was around the time he asked the trial court to reduce his monthly child support obligation. Mr. Archibald made consistent good faith efforts to pay child support thereafter. Apparently, Mr. Archibald could pay child support when he wants to. Because there was sufficient evidence to persuade a fair-minded

11

person that Mr. Archibald could pay when he wanted, we will not disturb the contempt

court's finding that Mr. Archibald could pay the ordered amounts and that his failure was

intentional.

CHILD DAY CARE EXPENSES

Mr. Archibald argues the trial court erred in finding him in contempt for not

paying almost $1,000 in day care expenses with only 10 days' notice. He raises multiple

arguments.

He first argues day care was unnecessary because he could have watched his

daughter "24/7," even when he worked. First, the parties' daughter was five years old for

most of the summer of 2021. One cannot work full-time and adequately parent a very

young child. Second, the parenting plan did not give either parent a right of first refusal.

He next argues Ms. Johnston failed to find part-time day care. He provides no

evidence that part-time day care existed. Also, this still would leave him working full-

time and parenting his five-year-old daughter part-time. This was not practical, especially

given that he could only work from home "for the most part." CP at 58.

He next argues he was unable to come up with nearly $1,000.00 in 10 days. This

argument ignores several facts. First, he knew his daughter was in day care since July 1,

2021. Second, Ms. Johnston expected him to pay his proportionate share, and the court

12

No. 38600-7-III
*In re Parentage of L.A.J.*

order required it. Third, Ms. Johnston requested payment of $894.08 in an

e-mail to him dated August 16, 2021, and she waited six weeks to bring her motion.

We affirm the contempt court's order and judgment.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, A.C.J.

WE CONCUR:

_____    _____
Fearing, J.                                  Staab, J.

13